UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

DALIP KUMAR,
    a/k/a "Dalip Vermani,"

              Defendant.

21 Cr. 755 (JPO)

---

## THE GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

David R. Felton
T. Josiah Pertz
Sarah Mortazavi
Assistant United States Attorneys
*-Of Counsel-*

## PRELIMINARY STATEMENT

The Government respectfully submits these supplemental motions *in limine* based on recent representations by the defense that post-dated the Government's motions *in limine*, dated March 23, 2023.  (Dkt. No. 51). The Government seeks rulings (i) precluding the defendant's proposed expert, (ii) excluding inadmissible portions of the defendant's post-arrest statement, (iii) precluding an entrapment defense absent a sufficient proffer of evidence, and (iv) establishing the admissibility of business records the Government plans to introduce at trial.

## ARGUMENT

### I.   The Defendant's Proposed Expert Should be Precluded

The Government respectfully moves to preclude the testimony of David Gannaway, first noticed by the defense as an expert in an email sent to the Government on April 3, 2023 (the "Defense Expert Email," attached as Exhibit A (omitting prior emails in the chain)).  As set forth below, this expert notice, submitted three weeks before trial—and which the defense has not supplemented, despite the Government's request—does not provide a complete statement of the opinions to be offered by Mr. Gannaway, or the bases or reasons for those opinions, and thus does not comply with Rule 16(b)(1)(C)(iii).  Without that required information, neither the Government nor the Court is in a position to evaluate whether Mr. Gannaway's opinions require specialized knowledge, are based upon facts or data of a type reasonably relied upon by experts, or are the product of reliable principles and methods.  Nor is there a basis to evaluate whether Mr. Gannaway's testimony would be relevant and helpful to the jury, or whether the testimony would be unfairly prejudicial under Rule 403.  Nor has the defendant provided the required list of all publications Mr. Gannaway has authored in the previous 10 years or a list of all other cases in the past four years in which the witness has testified as an expert at trial or by deposition, as required

by Fed. R. Crim. P. 16(b)(1)(C)(iii).  Moreover, the witness did not sign the disclosure, as required by Fed. R. Crim. P. 16(b)(1)(C)(v).

Further, the barebones descriptions of the expert's proposed opinions are nonetheless clear enough to expose the opinions as impermissible expressions of a legal conclusion and jury instructions, usurping the function of the Court in the process.  The opinions must therefore be precluded under binding Second Circuit precedent prohibiting such testimony.

Finally, the notice is late, coming after the deadline for motions *in limine*, thus leaving insufficient time for the Government to hire its own expert in order to prepare an effective cross-examination and put on a rebuttal case.  The defense has no reason for waiting until this stage of the proceeding to notice an expert, as the defense has had a substantial amount of time to plan its case.

### A.  Factual Background: The Defense Expert Email

On April 3, 2023, the defense sent the Defense Expert Email to the Government, stating that David Gannaway will be a defense expert, attaching a one-page resume that lacked a list of publications or past testimony, and providing the following information (copied below in its entirety) regarding the subject matter of the proposed expert testimony:

> 1.      David Gannaway will provide a summary of the financial transactions as alleged in the information, and depending on the Court's rulings, your 404b evidence, then give his opinion that the transactions alleged—dispositions of or the passing of funds from the purported SUA proceeds between the cooperating witness and defendant—is not money laundering; and
>
> 2.      he will describe what a financial transaction is and define what it is to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

The email concluded that the expert would "complete his report when we have all Rule 16 discovery, including translations, and then, depending, on the Court's rulings regarding 404b."

**B.  Applicable Law**

**1.  Rule 702**

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The party that proffers the testimony bears the burden of showing that it is admissible.  *See Bourjaily v. United States*, 483 U.S. 171, 172-73 (1987).  The District Court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

A threshold issue is whether the witness is "qualified as an expert" to render the proposed opinion.  *See Nimley v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005).  Expert testimony is admissible only if the trial court determines that it is both relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see Kumho Tire Company, Inc. v. Carmichael*, 526 U.S. 137 (1999).  Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.  "*Daubert* applies to both defense and government experts."  *United States v. Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

In *Joiner*, the Supreme Court explained that "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. at 146.  For example, in *Kumho Tire*, the Court upheld the exclusion of an expert's testimony that a defect caused a tire's tread to separate from the rest of the tire, because the expert's theories could not reliably determine the cause of the separation in the tire at issue.  526 U.S. at 154-55; *see also Amorgianos* v. *Romano Enterprises*, 303 F.3d 256, 267 (2d Cir. 2002) (district court should undertake a rigorous examination of the facts on which the expert relies, the expert's methodology, and the application of that methodology to the facts).

Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury.  *See Kumho Tire Co.*, 526 U.S. 137.  The fact that an expert may generally possess "specialized knowledge" does not automatically render his opinions in a particular case reliable.  *See SEC v. Lipson*, 46 F. Supp. 2d 758, 761 (N.D. Ill. 1998) (fact that witness is a certified public accountant, generally possessing the "specialized knowledge" to qualify as an expert witness, does not automatically render his opinions reliable).

Expert testimony is inadmissible when it addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).  In addition, as a general matter, trial courts should exclude expert testimony that "expresses a legal conclusion." *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  As the Second Circuit explained, "[e]ven if a jury were not misled into adopting a legal conclusion proffered by an expert witness, the testimony would remain objectionable by

communicating a legal standard—explicit or implicit—to the jury." *Id*. at 364.  Further, an expert "is not qualified to compete with the judge in the function of instructing the jury." *Id*.

Finally, the party seeking admission of expert testimony must demonstrate that the testimony is based on the witness's specialized knowledge. *See United States* v. *Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (district court erred in allowing expert testimony "about matters that required no specialized knowledge").  Expert testimony is inadmissible when it merely addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).  The Second Circuit has warned against the "uncontrolled" use of expert testimony that might have the effect of providing "an additional summation by having the expert interpret the evidence." *United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987).  A district court must therefore be vigilant to prevent an expert from coming "usurping the jury's function." *Id*.

## 2.  Rule 703

Rule 703 of the Federal Rules of Evidence precludes an expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value substantially outweighs their prejudicial effect, and the facts or data must be of a type that "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject."  Experts cannot be used as a substitute to calling witnesses to the events or facts at issue. For example, in *United States v. Zafar*, 291 Fed. Appx. 425, 427 (2d Cir. 2008), the Second Circuit affirmed the district court's exclusion of the defendant's proposed expert testimony about the use of stock-selection software found on the defendant's computer in a securities fraud case.  There was no evidence that the defendant actually used that software for stock trading at the time of the charged offenses. *Id*.  The Court affirmed the district court's decision, because the defense expert

was not trying "to show the jury how the software worked but to insinuate what had happened with respect to the relevant stock trades, a subject on which [the expert] was not a competent witness." *Id*.

### 3. Rules 401 and 403

Rules 401 and 403 of the Federal Rules of Evidence provide that evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but that the evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595.

### 4. Rule 16

Under the recently amended expert disclosure rules in the Federal Rules of Criminal Procedure, a defendant must "disclose to the government, in writing," a host of information "for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(C)(i). As Rule 16 further mandates,

> The disclosure for each expert witness must contain:
> - a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;
> - the bases and reasons for them;
> - the witness's qualifications, including a list of all publications authored in the previous 10 years; and
> - a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii). Additionally,

The witness must approve and sign the disclosure, unless the defendant:

states in the disclosure why the defendant could not obtain the witness's signature through reasonable efforts; or

has previously provided under (F) a report, signed by the witness, that contains all the opinions and the bases and reasons for them required by (iii).

Fed. R. Crim. P. 16(b)(1)(C)(v).

As the Advisory Committee notes to Rule 16 explain, the disclosure requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Ferguson*, 3:06 Cr. 137 (CFD), 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007) (citation omitted). "If a party fails to comply with Rule 16, the district court has broad discretion in fashioning a remedy, which may include granting a continuance or ordering the exclusion of evidence." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (cleaned up).

## C.  <u>Discussion</u>

### 1.  **Mr. Gannaway's Testimony Should Be Excluded Because the Expert Notice Fails to Comply with Rule 16(b)(1)(C)**

The proposed expert testimony should be excluded on multiple, independent grounds. First, the Defense Expert Email merely provides topics the defense seeks for Mr. Gannaway to testify about, without providing, as required, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief." Fed. R. Crim. P. 16(b)(1)(C)(iii). Moreover, it utterly fails to provide, as required, "the bases and reasons for" any of, much less all of, the expert's opinions. Fed. R. Crim. P. 16(b)(1)(C)(iii). Beyond these significant and substantive deficiencies, the Defense Expert Email fails to include a list of all publications Mr. Gannaway has authored in the previous 10 years or a list of all other cases in the

past four years in which the witness has testified as an expert at trial or by deposition, required by Fed. R. Crim. P. 16(b)(1)(C)(iii).  Moreover, the witness failed to sign the disclosure under Fed. R. Crim. P. 16(b)(1)(C)(v).

First, the notice does not include a complete statement of opinions, but simply lists broadly defined areas of testimony, described as: (1) an open-ended "summary" of financial transactions; (2) his unsupported opinion that the transactions are "not money laundering," devoid of any bases or reasons; and (3) an unsupplied definition of "what it is to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."[1] This notice is plainly insufficient under Rule 16(b)(1)(C), as it is lacks any specific information regarding the opinions of the expert as to any of these issues.  *United States v. Valle*, No. 12 Cr. 847(PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's *actual opinions*.") (emphasis added) (citing *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001)).  This is all the more the case under the recently amended expert disclosure rules, which require even more detailed disclosure than did the prior rules.

In order for the Government and the Court to evaluate whether the proposed expert testimony is "the product of reliable principles and methods" under *Daubert* and its progeny, the defendant is obligated to provide the Government with more than passing references to the types of information the proposed expert reviewed or considered in the course of preparing to testify. *See*, *e.g.*, *Nimely* v. *City of New York,* 414 F.3d 381, 396-97 (2d Cir. 2005) (holding that district courts have a screening function to evaluate the qualifications of an expert, the reliability of the

---

[1] Areas (2) and (3) are independently excludable for the reasons set forth in Section I.C.2., below.

expert's opinions, and the relevance of the proposed expert testimony); *SEC* v. *Johnson*, 525 F. Supp. 2d 70, 74 (D.D.C. 2007) ("The first prong of *Daubert* requires the trial court to assess the methodology employed by the expert as a means of ensuring evidentiary reliability."). Without proper notice, the Government is unable to evaluate and, if warranted, make any challenges to the proffered testimony, and the Court is not in a position to effectively exercise its gatekeeping functions to exclude the testimony to the extent it is improper.

Further, the insufficiency of the expert notice regarding Mr. Gannaway's testimony makes it impossible for the Government to test the merits of the proffered testimony through cross-examination. By waiting until shortly before trial and by omitting any specifics regarding both the opinions to be rendered *and* the bases and reasons for them, this defense has failed to give the Government any opportunity to perform its own analysis or to seek to obtain its own expert to evaluate the opinions of the defense expert. The very purpose of the notice requirements of Rule 16(b)(1)(C) is to ensure that the opposing party is afforded such an opportunity, in the interest of protecting the integrity of the adversarial process. *See, e.g.*, *United States v. Hoffecker*, 530 F.3d 137, 187 (3d Cir. 2008) (affirming district court's preclusion of defense expert where insufficient Rule 16(b)(1)(C) notice was provided three days before jury selection, holding that "admission of this testimony would have been an affront to the public interests in the 'integrity of the adversary process,' 'the fair and efficient administration of justice,' and 'the truth-determining function of the trial process'"). Under the circumstances, in the event that Mr. Gannaway's testimony is not precluded, the Government may be forced to request a continuance after he testifies in order to permit an effective response, which is exactly what the notice requirements of Rule 16(b)(1)(C) were designed to prevent. *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2011 WL 723530, at *3 (S.D.N.Y. Feb. 25, 2011) ("[T]he purpose of reciprocal expert disclosures is to minimize

surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.") (internal quotation marks and citation omitted); *accord United States* v. *Valle*, 2013 WL 440687, at *5.

### 2.  Mr. Gannaway's Testimony Should Be Precluded Because It Impermissibly Seeks to Present Legal Conclusions

The proposed testimony should also be precluded because it seeks to present legal conclusions and explanations that are the exclusive province of the Court. According to the Defense Expert Email, Mr. Gannaway would (1) testify that "the transactions alleged—dispositions of or the passing of funds from the purported SUA proceeds between the cooperating witness and defendant—is not money laundering;" and (2) "describe what a financial transaction is and define what it is to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." The proposed opinion that particular transactions do not constitute money laundering is a paradigmatic example of an impermissible attempt to "express[] a legal conclusion." *Hygh*, 961 F.2d at 363. And the proposed testimony defining a financial transaction and the concept of concealment are essentially proposed jury instructions—an effort to "communicat[e] a legal standard—explicit or implicit—to the jury" and to "compete with the judge in the function of instructing the jury"—for which no expert testimony is permissible or necessary. *Id*. at 364. Thus, the proposed testimony must also be excluded on these grounds.

* * *

For the foregoing reasons, the Government respectfully requests that the proffered testimony of Mr. Gannaway be precluded in its entirety.

## II.  The Defendant's Post-Arrest Statement Should Not Be Admitted in its Entirety

The defendant's lengthy, video-recorded post-arrest interview exceeds one hour in length. The Government intends to introduce at trial the highlighted portions, in the attached exhibit, of the interview.  *See* Exhibit B (highlighted full transcript).  By contrast, the defendant asserts without elaboration that "the entirety of Mr. Kumar's post-arrest interview should be admitted." (Dkt. No. 58 at 7).  Because the defendant has failed to meet his burden of demonstrating that the portions of the statement he seeks to offer are relevant and necessary to clarify or explain the portions the Government intends to offer—as opposed to a needless waste of the jury's time and an irrelevant, inadmissible effort to "humanize" the defendant through the admission of self-serving testimony—the Court should reject the defendant's empty, unsupported request to admit the whole post-arrest interview.

Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a defendant's out-of-court statement is not hearsay when offered by the Government.  Fed. R. Evid. 801(d)(2)(A) ("A statement is not hearsay if . . . [it] is offered against a party and is the party's own statement."); *see also*, *e.g.*, *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[U]nder Rule 801(d)(2)(A)," a defendant's statement offered by the Government "is not hearsay, because it is simply a statement of the opposing party.").  The defendant, however, does not have a parallel ability to offer his own statement into evidence.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Marin*, 669 F.2d at 84; *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted").

Notwithstanding the hearsay bar, a defendant may in some circumstances invoke the

"rule of completeness" to require the introduction of additional portions of his own out-of-court statement when the Government offers excerpts of it. *See* Fed. R. Evid. 106. "Under this principle, even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)); *see also United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (same).

The Government is under no obligation to offer all portions of a statement when it offers inculpatory admissions. *See United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (finding that a "self-serving [exculpatory] statement that does not contradict, explain, or qualify the rest of the statement" did not need to be offered by Government under rule of completeness when Government offered inculpatory statements); *United States v. Smith*, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (holding that district court did not err in precluding cross-examination on portions of post-arrest statement describing relationship to co-defendant and implicating co-defendant when Government offered admission that defendant had been present at the time of co-defendant's arrest).

Indeed, "'[t]he completeness doctrine does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.'" *Johnson*, 507 F.3d at 796 (quoting *Jackson*, 180 F.3d at 73). This rule is strictly applied, leading the Second Circuit to hold, for example, that a defendant could not introduce a portion of his confession relating "to the execution of a robbery," where the portion introduced by the Government concerned only "plans to execute the robbery." *Johnson*, 507 F.3d at 796; *United*

*Stats v. Lumiere*, 16 Cr. 483 (JSR) (Jan. 6. 2017), Dkt. No. 62 at 6 (describing the rule of completeness as a "narrowly drawn rule" and granting Government motion to preclude prior defendant out-of-court statements).   Ultimately, the burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer.  *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

Put another way, a defendant is not entitled to introduce the exculpatory portions of an interview in order to "complete" the story simply because the Government offered an incriminating portion of the interview.  *See United Sates v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983) (Rule 106 "does not render admissible evidence that is otherwise inadmissible"); *United States v. Gonzalez*, 399 Fed. App'x 641, 646 (2d Cir. 2010) ("[T]he rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony."); *Jackson*, 180 F.3d at 73 (affirming district court's ruling that Rule 106 did not justify admission of defendant's "own self-serving statements"); *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (court properly excluded redacted portions offered to show the jury the "flavor of the interview," to "humanize" the defendant, to prove his "character," and to convey to the jury the voluntariness of the statement); *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (agent testified about incriminating statements made by defendant in interview; court properly precluded defense from introducing exculpatory statements from the same interview); *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) ("Removing [defendant's] explanation of the religious and political motivations for his actions did not

change the meaning of the portions of his confession submitted to the jury.  The redaction did not alter the fact that he admitted committing the acts with which he was charged."). Defendants are not entitled to introduce statements that are merely "post-hoc explanations for prior conduct, which [do] not alter the meaning" of the admitted statements.  *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016).

That is precisely what the defendant is attempting to do here.  As reflected in the defendant's unexplained proposal to play a recording that runs over one hour long, the defendant apparently seeks to introduce irrelevant, self-serving statements about his family and perfume and jewelry business that attempt to cast him in a sympathetic light or provide an explanation or rationalization of the conduct at the heart of this case.  Under the "narrowly drawn" rule of completeness, *Lumiere*, 16 Cr. 483 (JSR), Dkt. No. 62 at 6, these statements are not necessary to alter the meaning of or explain the statements offered by the Government, nor are they needed to put the Government's statements in context, *Lange*, 834 F.3d at 79; *Johnson*, 507 F.3d at 796. Rather, they are irrelevant, and seemingly part of an impermissible attempt to bypass evidentiary rules and "humanize" the defendant.  *Gonzalez*, 399 Fed. App'x at 646; *Jackson*, 180 F.3d at 73; *Vallejos*, 742 F.3d at 905.  In short, the defendant has failed to meet his burden of demonstrating that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer.  *Glover*, 101 F.3d at 1190.  Accordingly, the defendant has not shown, nor could he, that anything in Rule 106 requires admission of the full post-arrest interview.

### III.  Absent a Proffer of Evidence to Support an Entrapment Defense, the Defendant Should Be Precluded from Raising It

Before the motions *in limine* deadline, the defense represented to the Government that it did not intend to pursue an entrapment defense.  (Dkt. No. 51 at 19 n.1).  For the first time, a week

14

after the motions *in limine* deadline passed, the defense included a proposed entrapment jury instruction in its requests to charge.  (Dkt. No. 56 at 10).  The Government inquired whether the proposed entrapment instruction was inadvertent, and the defense responded that it is "considering" an entrapment defense.  On this record, the Government moves to preclude the defendant from proffering in his opening statements, or argument, that he was entrapped by the Government.

The affirmative defense of entrapment consists of two related elements: "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part."  *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (internal quotation marks omitted).  Inducement "happens when the government has 'initiated the crime.'" *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021) (cleaned up). "More broadly, inducement covers soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged."  *Id.*  To satisfy the first element, "the defendant has the burden to produce 'some credible' evidence—but need not prove by a preponderance of the evidence—that the government induced him to commit the crime."  *Id*. at 147.  As to the second element, "[p]redisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an unwary innocent, or instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime."  *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013).  "A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so."  *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (internal quotation marks omitted).

> [P]redisposition may be shown by evidence of: "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is

charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement."

*United States v. Brand*, 467 F.3d 179, 192 (2d Cir. 2006) (quoting *United States v. Brunshtein*, 344 F.3d 91, 101-02 (2d Cir. 2003)).

The Government is unaware of a factual basis from which the defendant could argue entrapment.  At this point, the defendant has not proffered any evidence, much less "credible evidence," *Cabrera*, 13 F.4th at 147, in support of an argument that he was induced.  As to predisposition, the defendant's 2016 transactions with the Government confidential source ("CS-1"), represented by CS-1 to the defendant to be the proceeds of illegal check-cashing, evince both an existing course of criminal conduct similar to the 2019 and 2021 crimes for which the defendant is charged, and an already formed design on the part of the accused to commit the crime for which he is charged.  *Brand*, 467 F.3d at 192.  Further, even if he were induced, the defendant easily exhibited "a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement."  *Id.* at 191.  For each charged transaction, shortly after CS-1 informed the defendant that the funds were crime proceeds, the defendant took steps to carry out the money laundering transactions.  At no point did the defendant resist CS-1's requests to commit money laundering; to the contrary, the defendant willingly, and without question or resistance, agreed to launder funds represented to be crime proceeds in each of 2016, 2019, and 2021.  The fact that the defendant willingly carried out his crime several times over several years further deflates any predisposition argument that he may seek to raise.

Under the circumstances, any attempt by the defendant to assert this defense at trial would confuse the jury and prejudice the Government—especially if, as appears likely to be the case here, no entrapment charge is ultimately provided by the Court.  *See United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (A defendant "may not argue before the jury issues relating

to the overall propriety of the Government's investigation in this case."); *United States v. Mergen*, No. 06 Cr. 352 (NGG), 2010 WL 395974, at *7 (E.D.N.Y, Feb. 3, 2010) (where defendant's theory is "legally insufficient," court can properly "preclude Defendant from presenting the defense to the jury"); *see also United States v. Stein*, 985 F.3d 1254, 1264-66 (10th Cir. 2021) (defendants not entitled to instruction on entrapment defense because the evidence at trial did not create triable issues as to either inducement or lack of predisposition), *cert. denied*, 142 S. Ct. 435 (2021). Consequently, on the current record and without more, the defendant should be precluded from invoking such a defense at trial.

### IV.  Business Records Are Admissible at Trial

The Government respectfully requests that, at trial, the Court admit into evidence certain business records on the basis of written declarations of the relevant custodian of records, pursuant to Federal Rules of Evidence 803(6) and 902(11). Trial in this matter is scheduled to begin on April 24, 2023. The defendant has not yet indicated to the Government whether he will agree to stipulate to the authenticity of a document unless there is a witness on the stand to answer questions regarding the documents. The Government plans to introduce business records from multiple financial institutions and other entities, including banks and a phone carrier, as well as from U.S. Customs and Border Protection ("CBP"), and license plate reader ("LPR") data from the New York City Police Department ("NYPD").  Calling witness custodians from each of these institutions merely to authenticate business records would require witnesses to travel, including from out-of-state.

A finding by the Court that certain business records may be introduced pursuant to written certification under Rule 902(11) will obviate the need for significant inconvenience and expenditure of time.  Moreover, a finding by the Court that business records may be introduced pursuant to written certification would meaningfully streamline the Government's presentation of

evidence, serve the ends of judicial economy, and preserve the time and attention of the jury.  Rule 902(11) exists for precisely this reason.

### A.    Applicable Law

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court found that out-of-court statements that are "testimonial" violate the Confrontation Clause of the Sixth Amendment and are inadmissible unless the declarant is unavailable, and the defendant has had prior opportunity to cross-examine the declarant regarding the statement.  The Second Circuit, however, has held that business records properly admitted under Federal Rule of Evidence 803(6) "cannot be testimonial because a business record is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence."  *United States v. Feliz*, 467 F.3d 227, 233-34 (2d Cir. 2006); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements are "testimonial" if their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution").

Under Rule 803(6), a record may be admitted as non-hearsay if it was made at or near the time by someone with knowledge, or who had the information transmitted to them by someone with knowledge; the record was kept in the course of a regularly conducted activity of a business or organization; and making the record was a regular practice of that business activity.  Fed. R. Evid. 803(6).  "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable."  *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632-33 (2d Cir. 1994) (internal quotation marks omitted).  The Second Circuit has taken a "generous view of the business records exception, construing it to favor [] the admission of evidence . . . if it has any probative value at all."  *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (internal citations omitted).

Business records of regularly conducted activity that meet the necessary conditions to qualify under the hearsay exception may be authenticated, among other methods, by a certification that complies with Rule 902(11).  Fed. R. Evid. 803(6)(D); *see also United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) ("Records are self-authenticating if they include a custodian certification that the records 'meet[] the requirements of Rule 803(6)(A)-(C).'").  Specifically, Rule 902(11) provides, in relevant part, that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person . . ." is self-authenticating and requires no extrinsic evidence of authenticity to be admitted.  Prior to trial, the proponent of the records must also give the adverse party reasonable written notice of the intent to offer the records and make the records and certifications available for inspection so that the adverse party has a fair opportunity to challenge them.  *Id.*

Just as properly admitted business records are not considered testimonial, so too a certification required under Rule 902(11) to authenticate such records is not considered testimonial.  In *United States v. Qualls*, 53 F. Supp. 2d 241, 245 (E.D.N.Y. 2008), *aff'd summary order*, 613 Fed. Appx. 25 (2d Cir. 2015), the court held that authentication of foreign business records pursuant to Section 3505 did not violate the Confrontation Clause of the Sixth Amendment.  In so holding, the court reasoned that prohibiting the admission of records necessary to authenticate the business records themselves would be contrary to the Supreme Court's intention to support the admission of business records as nontestimonial.  *Id.* at 246.  The court further observed that judicial economy would be reduced with little gain to the truth-seeking process if these business records had to be authenticated by live witness testimony.  *Id.*

While the Second Circuit's summary order affirming the decision in *Qualls* did not explicitly reach the question of whether a certificate authenticating business records could itself

19

be considered testimonial, all other circuits that have addressed the question have held that it is not.[2] *See United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (certificate of authenticity presented under Rule 902(11) is not testimonial); *United States v. Anekwu*, 695 F.3d 967, 977 (9th Cir. 2012) (not plain error for district court to admit business records authenticated by certificate where the purpose of the certificate was merely to authenticate the records and not to establish or prove a fact at trial); *United States v. Adefehinti*, 510 F.3d 319, 327-38 (D.C. Cir. 2008) (authentication of hundreds of loan applications, sales contracts, promissory notes, verifications of deposit and of employment by way of 902(11) certifications by numerous custodians of record is permissible under *Crawford*); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (written certification attesting to authenticity of business record is not testimonial evidence). *See also United States v. Al-Imam*, 382 F. Supp. 3d 51, 59-60 (D.D.C. 2019) ("Every court that has addressed this issue has concluded that admission of certifications pursuant to Rule 803(6)—including § 3505 and its analogs in Rule 902(11) and (12)—does not pose Confrontation Clause problems" and gathering cases); *United States v. Varone*, No. 08 Cr. 184, 2008 WL 11352621, at *1 (N.D. Ohio Dec. 4, 2008) ("The certificates of authenticity, in this case, do not purport to convey any information about Defendant, but merely establish the foundational elements necessary to create a business record."); *United States v. Bryant*, No. 04 Cr. 47, 2006 WL 1700107, at *4 (W.D. Va. June 15, 2006) (a "business record certification . . . does not serve independently as evidence in[a] case; rather, it serves merely to lay a foundation for the admission

---

[2] In *Qualls*, the foreign business records at issue were admitted by the district court under 18 U.S.C. § 3505 based on records certifications, but the certifications themselves were not introduced as evidence. The Second Circuit found that the admission was proper but did not address whether the certifications themselves were testimonial, reasoning that because the certifications were not in evidence, there could be no Confrontation Clause issue. 613 Fed. Appx. at 28-29.

of business records"); *cf. United States v. Jimenez*, 513 F.3d 62, 77-80 (3d Cir. 2008) (reserving decision on whether certificates of authenticity were subject to Confrontation Clause and holding that even if such certificates were testimonial, the admission of these certificates to authenticate bank records was harmless error because there was no challenge to the authenticity of the bank records themselves).

### B.  Discussion

The specific business records at issue here are financial institution account records, including, where available, account opening documents, account statements, and wire transfer records ("Financial Records"), subscriber records for the defendant's phone from Verizon ("Phone Records"), as well as CBP records indicating two international flights boarded by CHS-1 ("Travel Records") and LPR records of the defendant's car ("LPR Records").  Many of these records were produced with an accompanying custodial records certification.  (*See* Exhibit C, collecting certifications the Government seeks to introduce.).  The Government is in the process of collecting the remaining certifications and will produce those as soon as they are received.  These certifications repeat the requirements of Rule 803(6) nearly verbatim and are signed subject to the penalty of perjury.

The defendant has not agreed to enter a stipulation at this time, and has not offered any specific reason to doubt that the Financial Records, Phone Records, Travel Records and LPR Records are authentic business records.  *See* Fed. R. Evid. 803(6)(E) (noting that records of regularly conducted activity in accordance with Rule 803(6)(A)-(D) are admissible absent a showing that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness).  Indeed, a proper foundation for the admission of the records can be established by the certificate of the relevant records custodian, which restates the requirements of Rule 803(6)(A)-(C) nearly verbatim, which is precisely what the Government intends to offer here.

*See, e.g.*, *United States v. Weigand*, No. 20-CR-188 (JSR), 2021 WL 568173, at *3 (S.D.N.Y. Feb. 14, 2021) (finding that where "[d]efendants offer[ed] no specific reason to doubt the self-authenticability" of certain bank records and other similar business records, those records were self-authenticating); *Ayelotan*, 917 F.3d at 401-03 (finding that "email provider's statement that one user wrote and sent a message to another user at the recorded time" was a self-authenticating business record when accompanied by proper certificate from records custodian); *see also Conde*, 19 Cr. 808, ECF No. 244 (granting Government's motion to use records certification to establish the foundation as well as the authenticity of bank records and certain other business records).

As noted above, the Government has already produced to the defendant many of the certifications it intends to rely upon to admit these records, and is in the process of collecting the remainder of the certifications, and intends to produce those to defendant upon receipt of the certifications. Accordingly, the defendant now has "notice of the intent to offer" the relevant records, and an opportunity to inspect them, "so that the [adverse] party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). To the extent the defendant is not challenging authenticity, but simply has factual questions custodial witnesses might be in a position to answer, the defendant can seek to call those witnesses.

For the reasons stated above, the Government respectfully requests that the Court rule that the Government may introduce at trial the business records discussed above pursuant to Federal Rules of Evidence 803(6) and 902(11) and without the live testimony of any document custodian.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Government's supplemental motions *in limine* should be

granted.

Dated:  New York, New York
        April 13, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
      David R. Felton
      T. Josiah Pertz
      Sarah Mortazavi
      Assistant United States Attorneys
      (212) 637-2299 / -2246 / -2520